IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| W. W.,<br><br>    Plaintiff,<br><br>v.<br><br>ALLEGHENY HEALTH NETWORK,<br><br>    Defendant. | 2:23-CV-01163-CCW |

**OPINION**

On June 23, 2023, Plaintiff W.W.[1] filed a putative class action against Defendant Allegheny Health Network ("AHN"). ECF No. 1. Plaintiff contends that AHN unlawfully collected confidential health information from users who visited the AHN website, and then disclosed their information to third parties, in violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1), and several Pennsylvania state laws. *See generally* ECF No. 1. In response, AHN moved to compel arbitration pursuant to an arbitration agreement appearing in AHN's Terms of Service, a link to which appears on AHN's website. ECF No. 15. On May 16, 2024, the Court denied without prejudice AHN's motion to compel arbitration and ordered the parties to proceed to limited fact discovery on the issue of arbitrability. ECF No. 28. Following fact discovery, AHN renewed its Motion to Compel Arbitration, which Plaintiff opposes. ECF Nos. 29, 36. Having been fully briefed, the matter is now ripe for disposition.[2] ECF Nos. 29–32, 36, 39–42.

---

[1] Plaintiff W.W. filed his Complaint pseudonymously to protect his private health information.
[2] This Court has federal question jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over his state-law claims pursuant to 28 U.S.C. § 1367.

I.      **Material Facts**

The following facts are drawn from the parties' consolidated factual statements, ECF Nos. 30, 39, 42, and are undisputed unless otherwise noted.

Plaintiff has been AHN's patient for several years and, since 2015, has frequently and regularly used AHN's website (www.ahn.org) and the specific "Find a Doctor" page to obtain treatment and services. ECF No. 39 ¶¶ 1–3. On December 19, 2022, AHN added Terms of Service to its website. *Id.* ¶ 7. The Terms of Service state:

> Anyone using this Site agrees to be bound by the terms of use. . . . If you do not accept these terms and conditions, you must not access or use the Site. By accessing and using the Website, you are indicating your acceptance to be bound by these Terms of Service.

*Id.* ¶ 18; ECF No. 32-2 at 1. These Terms of Service also contain a Pennsylvania choice-of-law provision and include an arbitration provision. ECF No. 39 ¶¶ 7, 22. This arbitration provision states:

> Any dispute, cause of action, controversy or claim . . . by either party, arising out of or relating to: i) these Terms of Service, ii) Any additional Terms and Conditions contained on the Site (including but not limited to the Privacy Policy and GDPR Policy), iii) your use of this Site, and iv) any products and/or services accessed within or through the Site, shall be resolved by a single impartial arbitrator.

*Id.* ¶ 20; ECF No. 32-2 at 5. A link to the Terms of Service appears on the homepage of AHN's website and on the "Find a Doctor" page.[3] ECF No. 39 ¶¶ 8, 15. On AHN's homepage, the Terms of Service link is located at the very bottom of the page, requiring the user to first scroll through several sections of content. *Id.*; *see also* AHN, Homepage, *available at* https://www.ahn.org (last visited February 20, 2025) (requiring user to scroll through several sections of content before reaching bottom of page). The bottom of the homepage contains a large, dark blue footer with the

---

[3] The appearance of AHN's "Find a Doctor" page and the footer of every other webpage containing the Terms of Service link have remained consistent since the Terms were added on December 19, 2022. ECF No. 39 ¶ 17.

AHN logo, phone number, and social media icons as well as over forty different links displayed in white font.  ECF No. 39 ¶ 15  Among these links is the Terms of Service link.  *Id.*



AHN, Homepage, *available at* https://www.ahn.org (last visited February 20, 2025).

The link to the Terms of Service also appears on AHN's "Find a Doctor" page.  ECF No. 39 ¶ 8;  *see also* AHN, Find a Doctor page, *available at* https://findcare.ahn.org/ (last visited February 20, 2025).  This webpage contains a mint green background with a search bar in the middle of the screen.  *Id.*  At the bottom of the page, there is a dark blue footer containing the AHN logo and phone number in bright-white font.  *Id.*  Below this, there is a second, much thinner footer, in dark navy with four links displayed in a grayish-white font.  *Id.*  One of these links is the Terms of Service.  *Id.*



AHN, Find a Doctor page, *available at* https://findcare.ahn.org/ (last visited February 20, 2025).

Whether a user must scroll down on the "Find a Doctor" page to reach the footer containing the Terms of Service link depends on the type of electronic device being used. ECF No. 42 ¶ 2 (explaining that Plaintiff, who generally used an iPhone or iPad, was unable to view the Terms of Service link without scrolling, while AHN contends that the link is visible if the user is viewing the site on an iPad Air 2 held vertically); *see* AHN, Find a Doctor page, *available at* https://findcare.ahn.org/ (last visited February 20, 2025) (requiring iPhone user to scroll down and open a drop-down menu to access Terms of Service link, and requiring a laptop user to scroll down slightly to reach the link, but not requiring a user to scroll when using a large computer monitor).

The parties dispute whether Plaintiff accessed and viewed AHN's Terms of Service. Plaintiff maintains that he never scrolled to the bottom of AHN's webpages where the Terms of Service link is located, and to date, has not seen the link on AHN's website. ECF No. 42 ¶¶ 3, 6. He further asserts that he never clicked a link to AHN's Terms of Service. *Id.* ¶ 4. And he never reviewed or agreed to any Terms of Service with AHN that required him to participate in

arbitration. *Id.* ¶ 1. He also contends that he never saw a notice advising him that continued use of the AHN website constitutes acceptance of AHN's Terms of Service. *See id.* ¶ 7; ECF No. 32-5 at 67:8–23. AHN, however, counters that when Plaintiff was shown the December 19, 2022 Terms of Service during his June 26, 2024 deposition, he said "yes," he had previously seen them. ECF No. 39 ¶ 56; *see also* ECF No. 32-5 at 66:16–67:5. But when asked "when" he had seen them, Plaintiff responded "Not in depth, but I seen [sic] them a couple of years back when they tried to get me to sign them. It may not be the exact pages." *Id.*

Now AHN seeks to compel arbitration, contending that the Terms of Service—containing the arbitration provision—constitute a valid and enforceable contract. ECF No. 29. Plaintiff responds that there is no valid arbitration agreement because the Terms of Service—and therefore the arbitration provision contained within—are not enforceable. The Court will address the applicable legal standard, relevant law, and validity of the arbitration agreement in turn below.

## II.     Legal Standard

When presented with a motion to compel arbitration, the Court must affirmatively answer two questions before compelling arbitration pursuant to § 4 of the Federal Arbitration Act: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the dispute at issue falls within the scope of the arbitration agreement. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009). "Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect." *James v. Global TelLink Corp.*, 852 F.3d 262, 268 (3d Cir. 2017) (citing *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)).

Here, the Court previously found that "the arbitration agreement is not apparent from, or integral to, the Complaint," so it ordered "limited discovery on the narrow issue concerning the

[arbitration agreement's] validity." ECF No. 28. Based on the parties' briefing, their dispute focuses solely on the first question—whether they entered into a valid arbitration agreement—and not whether Plaintiff's claims fall within the scope of that agreement. ECF No. 31 at 18–20 (contending that Plaintiff's claims fall within the scope of the arbitration provision); ECF No. 36 at 8 (noting that whether Plaintiff's claims fall within the arbitration agreement's scope is "irrelevant" because the Court must first decide whether the arbitration agreement is enforceable).

Because the parties have conducted fact discovery on this issue, the Court will decide the Motion to Compel under the summary judgment standard set forth by Federal Rule of Civil Procedure 56. *See Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir. 2013).

Under Rule 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of showing that the non-movant has failed to establish one or more essential elements of its case, and, once that initial burden is met, the non-moving party must go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Guidotti*, 716 F.3d at 772 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (cleaned up)). The party opposing summary judgment must show that there is a genuine dispute of material fact and must support that assertion by "citing to particular parts of . . . the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials." *Id.* (citing Fed. R. Civ. P. 56(c)(1)(A)).

In evaluating a motion to compel arbitration under the Rule 56 standard, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Guidotti*, 716 F.3d at 772 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). But while the court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor," under Rule 56, "to prevail on a motion for summary judgment, the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the [non-movant]." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (internal citations and quotations omitted).

If a genuine issue of material fact remains after summary judgment on whether a validly formed and enforceable arbitration agreement exists, "the court must proceed summarily to trial on 'the making of the arbitration agreement.'" *MXM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 406 (3d Cir. 2020); 9 U.S.C. § 4 ("If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.").

**III.    Analysis**

AHN asserts that the arbitration agreement in its Terms of Service is valid because it constitutes an enforceable contract to which the parties agreed. *See generally* ECF No. 31. According to AHN, it constitutes a valid contract under Pennsylvania law because the Terms of Service, which are conspicuously posted on its website, state that continued use of the website constitutes acceptance of the terms. *Id.* And when Plaintiff, who had actual and constructive notice of these terms, continued to use the AHN website, he manifested his assent to the Terms of Service, including the agreement to arbitrate. *Id.* Plaintiff responds that the arbitration agreement

7

is not valid because the parties did not enter into an enforceable contract. *See generally* ECF No. 36. Plaintiff asserts that there is no valid contract because he never read, reviewed, or opened the Terms of Service and was therefore unaware of its arbitration provision. *Id.* Furthermore, Plaintiff contends that merely posting a link to the Terms of Service on a webpage does not bind him to the terms contained therein. *Id.*

### A.     The Court will Apply Pennsylvania Contract Law.

To determine whether the parties entered into a valid arbitration agreement, courts turn to "ordinary state-law principles that govern the formation of contracts." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *First Options of Chic., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 288 (3d Cir. 2017). Here, neither party disputes that Pennsylvania law applies. ECF Nos. 31 at 1 ("The Arbitration Provision is a valid 'browsewrap' agreement under applicable Pennsylvania law."); 36 at 6–8 (applying Pennsylvania law). Further, the Terms of Service contained a Pennsylvania choice-of-law provision, ECF No. 32-3 at 4, both parties are located in Pennsylvania, ECF No. 1, all relevant events occurred in Pennsylvania, *see generally id.*, and this Court sits in Pennsylvania. Accordingly, the Court will apply Pennsylvania state contract law.

### B.     Elements for a Valid Arbitration Agreement Under Pennsylvania Law.

Under Pennsylvania law, to form an enforceable contract, there must be "an offer, acceptance, [and] consideration or mutual meeting of the minds." *Happy v. Marlette Funding, LLC*, 744 F. Supp. 3d 403, 411 (W.D. Pa. 2024) (Baxter, J.) (citing *Chilutti v. Uber Techs., Inc.*, 300 A.3d 430, 443 (Pa. Super. 2023) (*en banc*)). A contract entered into without knowledge of the existence of the offer and knowledge of the specific terms thereof is not enforceable:

> It is basic contract law that there . . . must be an intended, definite, specific offer before any offer can be accepted or any enforceable

> contract created. One cannot suppose that another made an offer, was willing to make an offer or intended sometime to do so. Minds for contractual obligation, must meet upon definite, specific things.

*Morosetti v. La. Land & Exploration Co.*, 564 A.2d 151, 153 (Pa. 1989); *Bush v. Comcast Cable Communs. Mgmt., LLC*, No. 2:19-cv-01004, 2020 WL 4199077, at *9 (W.D. Pa. July 22, 2020) (Ranjan, J.) ("[W]ithout knowing the terms of the contract, one cannot accept them."); *Scott v. Educ. Mgmt. Corp.*, 662 F. App'x 126, 131 (3d Cir. 2016) ("Pennsylvania law requires that any agreement to arbitrate be clear and unmistakable.") (cleaned up).

### C. The Arbitration Agreement is Unenforceable Under Pennsylvania Law Because Plaintiff Did Not Have Actual or Constructive Notice.

AHN's Terms of Service—which contain the arbitration agreement—constitute a browsewrap agreement,[4] so the Court must determine whether such an agreement is enforceable under Pennsylvania law. Generally, such agreements are enforceable where the user had either actual or constructive notice of the agreement. *See Kirkham v. TaxAct, Inc.*, No. 23-3303, 2024 WL 1143481, at *8 (E.D. Pa. Mar. 15, 2024) (citing *Berman v. Freedom Financial Network, LLC.*, 30 F.4th 849, 856 (9th Cir. 2022)); *see also Happy*, 744 F. Supp. 3d at 413 ("[A]n internet user need not actually read the terms and conditions or click on a hyperlink that makes them available as long as she has notice of their existence."). Further, courts look "not to inward, subjective intent but, rather, to the intent a reasonable person would apprehend in considering the parties' behavior."

---

[4] "In browsewrap agreements, a company's terms and conditions are generally posted on a website via hyperlink at the bottom of the screen. Unlike agreements where users must click on an acceptance after being presented with terms and conditions (known as 'clickwrap' agreements), browsewrap agreements do not require users to expressly manifest assent." *James*, 852 F.3d at 267. Here, the parties agree that the arbitration agreement appears in a browsewrap agreement. ECF No. 31 at 11–15 (arguing that a valid browsewrap agreement exists between Plaintiff and AHN); 36 at 8–19 (arguing that AHN's browsewrap agreement is unenforceable). The Court agrees that AHN's Terms of Service are a browsewrap agreement because they are only presented to the user as a hyperlink at the bottom of AHN's webpage and do not require users to affirmatively accept them, but instead assert that continued use of the website constitutes acceptance.

*Happy*, 744 F. Supp, 3d at 413 (internal quotations omitted).  Here, the Court finds that Plaintiff did not have actual or constructive notice of the arbitration agreement.

### 1. Plaintiff Did Not Have Actual Notice of the Arbitration Agreement.

Plaintiff maintains that he was unaware of the arbitration provision in AHN's Terms of Service.  ECF No. 42.  He states that he never reviewed, read, or clicked on the Terms of Service. *Id.* ¶¶ 1, 3, 4, 6.  He further contends that he did not know that his continued use of the website would bind him to those terms or that they contained an arbitration provision.  *Id.* ¶¶ 1, 7; ECF No. 32-5 at 67:8–23.  And while AHN challenges Plaintiff's assertions, it fails to show a genuine dispute of material fact as to whether Plaintiff had actual notice of the arbitration agreement.

AHN contends that Plaintiff had actual notice of the arbitration agreement because, in his deposition, he stated that "yes," he had previously seen the Terms of Service.  ECF No. 31 at 11–12;  39 ¶ 56.  But AHN fails to point to evidence showing that Plaintiff viewed the Terms of Service as they have appeared on its website since December 19, 2022, with the arbitration agreement.  Instead, the evidence shows that Plaintiff saw the Terms of Service "a couple of years back" when "they tried to get [him] to sign them," and the Terms of Service at issue here "may not be the exact pages" he saw.  ECF No. 39 ¶ 56;  *see also* ECF No. 32-5 at 66:16–67:5.

AHN has only posted its Terms of Service, with the arbitration agreement, on its website since December 19, 2022.  ECF No. 39 ¶ 7.  Plaintiff was deposed on June 26, 2024—approximately a year and half later.  ECF No. 32-5.  Therefore, it is not clear that the terms of service Plaintiff viewed "a couple of years back" were those posted less than two years prior—particularly since Plaintiff has visited AHN's website since 2015.  Moreover, AHN's current Terms of Service do not require or allow users to "sign them," calling into question whether Plaintiff saw the Terms of Service at issue here.  This is further reinforced by Plaintiff's assertion

that the Terms showed to him in the deposition "may not be the exact pages" he previously saw. Therefore, amidst Plaintiff's declarations that he has not reviewed, read, or opened the Terms of Service on AHN's website, and because he maintains he was unaware of the arbitration provision and that continued use of the website would bind him to the terms, merely showing that Plaintiff saw a set of terms several years ago is insufficient to create a genuine dispute of material fact requiring trial. Rather, viewing the facts in the light most favorable to Plaintiff, the Court finds that he did not have actual notice of the arbitration agreement in the Terms of Service as they have appeared on AHN's website since December 2022.

### 2. Plaintiff Did Not Have Constructive Notice of the Arbitration Agreement.

AHN asserts that its Terms of Service are conspicuously linked on every page of its website, thereby giving Plaintiff constructive notice of their terms. ECF No. 31 at 13–15. Plaintiff counters that he did not have constructive notice of the terms because the links are hidden at the bottom of every webpage, requiring the user to scroll in order to find it. ECF No. 36 at 10–19.

To assess whether a browsewrap agreement is valid, courts look at "whether the terms or a hyperlink to the terms are reasonably conspicuous on the webpage." *James*, 852 F.3d at 267. Generally, courts are more likely to enforce a browsewrap agreement "where the website contains an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound." *Id.*; *see also HealthplanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 333–34 (W.D. Pa. 2020) (Ranjan, J.) (collecting cases). But courts have refused to find constructive notice where "terms are linked in obscure sections of a webpage that users are unlikely to see." *Id.*

Here, the Court finds that the links to AHN's Terms of Service are not sufficiently conspicuous so as to establish constructive notice. First, AHN does not have an explicit textual notice informing users that their continued use of the website constitutes acceptance of those terms.

11

Second, on AHN's homepage, users must scroll past several sections of content to reach the footer containing the hyperlink. And while the white font of the link against the dark blue footer helps the link stand out, it is still one of over forty links in the footer, making it not reasonably conspicuous. *See Childs v. Fitness Int'l LLC*, No. 2:22-cv-05196, 2023 WL 3594180, at *3 (E.D. Pa. May 22, 2023) (finding browsewrap unenforceable where link to terms and conditions is one of many small hyperlinks at bottom of webpage and users are not informed that their continued use of the website constitutes acceptance of those terms, and that those terms contain an arbitration provision and waiver of right to a jury trial). Finally, the link on the "Find a Doctor" page, while only one of four links, is still relatively hidden. The link is located in a second footer at the bottom of the page in font considerably smaller than the surrounding text and is only visible without scrolling on certain devices. Therefore, the Court finds that the link to AHN's Terms of Service is not reasonably conspicuous such that users, like Plaintiff, have constructive notice of its terms.

Accordingly, the Court finds that Plaintiff did not have actual or constructive notice of the arbitration agreement, and therefore it is not a valid contract.

**IV.    Conclusion**

For the foregoing reasons, the Court will not compel arbitration of Plaintiff's claims, and AHN's Motion to Compel Arbitration will be denied.

DATED this 27th day of February, 2025.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record